UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AMY THOMAS,                                       :
                Plaintiff,              :
                                         :
v.                                                :
                                         :
TOWN OF MAMAKATING, NEW YORK;                     :   **OPINION AND ORDER**
TOWN BOARD OF THE TOWN OF                         :
MAMAKATING, NEW YORK; PLANNING                    :   18 CV 4295 (VB)
BOARD OF THE TOWN OF MAMAKATING,                  :
NEW YORK; MORT STAROBIN, as chairman              :
of the Planning Board of the Town of              :
Mamakating, New York; ZONING BOARD OF             :
APPEALS OF THE TOWN OF                            :
MAMAKATING NEW YORK; and MARY                     :
GRASS, individually and in her capacity as        :
Town of Mamakating Building Inspector,            :
                Defendants.             :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Amy Thomas brings this action under 42 U.S.C. § 1983 and Article 78 of the New York C.P.L.R. against the Town of Mamakating (the "town"); the Town Board; the town's Planning Board; Mort Starobin, the chairman of the town's Planning Board; the town's Zoning Board of Appeals ("ZBA"); and Mary Grass, the town's building inspector, alleging defendants violated plaintiff's constitutional rights in connection with her application to build a swimming pool and a pole barn on property she owns in town. Invoking Article 78, plaintiff asks the Court to set aside the adverse land use determinations of defendant Grass, the planning board, and the ZBA.

      Now pending is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #37).

      For the following reasons, the motion is GRANTED.

**BACKGROUND**

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.[1]

In 2008, plaintiff purchased a property in the town. The property contained a single-family home and a mound of sand that plaintiff alleges resulted from an abandoned, unpermitted mining operation.

I. Plaintiff Receives Approval to Build a Swimming Pool and a Pole Barn

In 2011, plaintiff applied for and received approval to build an in-ground swimming pool on her property. Several months later, defendant Grass, the town's building inspector, received a complaint that mining was occurring on plaintiff's property. Grass issued a stop-work order and referred the matter to the New York State Department of Environmental Conservation ("DEC").

On July 19, 2012, Plaintiff amended her building permit application to include a 1,500-square-foot pole barn in addition to the swimming pool. Grass decided the amended permit application required additional review and approval by the planning board and told plaintiff that her application had to undergo a site plan review, because the amount of grading "does not appear to be associated with the proposed improvements." (Compl. Ex. 4 at 1).[2]

---

[1] Defendants move to strike the complaint, which spans a whopping 105 pages with an additional 700 pages of exhibits, pursuant to Rule 8, which requires that the complaint consist of a "short and plain statement of the claim." The Court declines to strike the complaint despite its length and largely unnecessary repetition.

[2] In October 2012, plaintiff appealed to the ZBA Grass's determination that plaintiff's application to build a pole barn must undergo site review. On November 8, 2012, the ZBA found a pole barn does not require site plan approval but did not address the question whether "excess grading determined to be outside what is necessary for the construction of the pole barn" required a site plan approval. (Compl. Ex 5 at 3).

2

Plaintiff then submitted a site plan that was discussed during several planning board meetings in 2012 and 2013. On August 27, 2013, the planning board conditionally approved the site plan. Among the conditions of approval, plaintiff had to provide confirmation from DEC that the work was exempt from the New York Mined Land Reclamation Law.

On October 22, 2013, the planning board approved a modified site plan and instructed Grass to issue plaintiff's building permit before receiving confirmation from DEC. Plaintiff's site plan approval would expire eighteen months later, on or about April 22, 2015, unless she sought an extension prior to its expiration. (See Compl. Ex. 17; Town of Mamakating Zoning Code § 199-45(H)).

Plaintiff completed the final steps to begin construction. On November 12, 2013, plaintiff received a building permit. On January 27, 2014, plaintiff applied for DEC confirmation, and on February 6, 2014, DEC confirmed the work was exempt from the Mined Land Reclamation Law.

II.     Plaintiff's Site Plan Approval Expires

Because of various delays and weather-related issues, plaintiff did not complete construction within the eighteen-month period. On October 21, 2015, in response to neighbors' complaints, Grass and DEC representatives visited plaintiff's property. Grass issued a stop-work order and notice of violation, because plaintiff was still excavating the site even though her building permit and site plan had expired six months earlier. Grass also noted certain conditions of the site plan had not been followed, including that excavation was not occurring as specified, construction of the pool and pole barn had not yet commenced, excavated material was being bulldozed onto a neighboring property, trucks were not following the approved routes, and no erosion controls were in place.

On October 23, 2015, plaintiff sought a one-year extension of the site plan and building permit. According to plaintiff, the planning board did not respond to her request for two months despite numerous calls, letters, and emails.[3]

On December 22, 2015, the planning board heard plaintiff's extension request. Before ruling on that request, however, the board told plaintiff to submit to Grass an as-built survey of the work already completed to determine whether plaintiff had complied with the previously approved site plan. (Compl. Ex. 33 at 65). Plaintiff submitted the survey on April 26, 2016. Six weeks later, on June 10, the planning board requested plaintiff submit a revised survey. Plaintiff submitted a revised survey on July 26, 2016.

III.     Town Determines Plaintiff's Work Was a "Mining Activity"

Despite plaintiff's numerous requests for a determination, Grass and the town's engineer reviewed the revised survey for nearly six months. On January 20, 2017, Grass informed plaintiff she had "exceeded the limits of the area [of] approved disturbance," and the "maximum permitted 3.25 acres of area of disturbance." (Compl. Ex. 47 at 2–3). Grass concluded plaintiff's work was "a mining activity." (Id. at 3). Grass informed the plaintiff she could apply for a use variance pursuant to the zoning code.

On March 20, 2017, plaintiff appealed Grass's determination to the ZBA, arguing the excavation was not a mining activity. The ZBA discussed plaintiff's appeal on May 25, June 22, July 27, August 24, and November 30, 2017, and on January 25, 2018.

---

[3]     In the meantime, plaintiff also appealed to the ZBA the stop-work order and the notice of violation. She ultimately stayed her appeal pending the planning board's determination on whether to renew her site plan approval.

IV.     ZBA Upholds Town's Determination and Board Dismisses Extension Request

On January 25, 2018, the ZBA upheld Grass's determination, and made the following findings: (i) plaintiff's building permit expired on or about November 12, 2014; (ii) plaintiff's site plan expired eighteen months after its October 22, 2013, approval (accordingly, on April 22, 2015); (iii) plaintiff's "property disturbance" exceeded the amount approved in the site plan; (iv) plaintiff's activities constituted "extractive operations"; and (v) "extractive operations" are not permitted in plaintiff's zoning district. (Compl. Ex. 71 at 3–4).[4]

Furthermore, on January 25, 2018, defendant Starobin, the chair of the planning board, informed plaintiff her application to renew the previously approved site plan was deemed abandoned. (Compl. Ex. 68). To move forward, plaintiff would have to submit a new application and pay a corresponding fee. He noted that plaintiff had not responded to two prior letters. Plaintiff claims neither she nor her counsel received any such letters before January 25, 2018.

**DISCUSSION**

I.     Standard of Review

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The

---

[4]     The January 25, 2018, determination was not filed with the town clerk until April 14, 2018. (Compl. ¶ 32). Plaintiff refers to this determination as the April 14, 2018, determination; however, the Court will refer to it as the January 25, 2018, determination.

party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

II.  Ripeness

Plaintiff alleges (i) federal substantive and procedural due process violations, and a conspiracy to violate plaintiff's constitutional rights (claims one through four), and (ii) state law administrative challenges (claims five through thirteen) concerning three specific administrative findings—Grass's January 20, 2017, determination; the ZBA's January 25, 2018, determination; and the planning board's January 25, 2018, determination—as well as various defects in the town's processes, including failure to provide notice, deprivation of adverse materials, conflict of interest, bias, and prejudice.

Defendants argue plaintiff's claims are not ripe for review because they do not concern a final land use decision.

The Court agrees with defendants.

Ripeness is a jurisdictional requirement, so the Court must address it first. See Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). To be ripe for review, plaintiff's claims—here, due process, conspiracy, and Article 78 claims—concerning a municipal land use decision must challenge a final decision as to how the property can be used.

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88, 89 (2d Cir. 2002) (due process claims); Kowalczyk v. Barbarite, 2012 WL 4490733, at *10 (S.D.N.Y. Sept. 25, 2012) (conspiracy claims), aff'd, 594 F. App'x 690 (2d Cir. 2014); Reifler v. City of Poughkeepsie, 122 F.3d 1057 (2d Cir. 1997) (Article 78 claims).

A land use decision is not final until "a property owner submit[s] at least one meaningful application for a variance," because "a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes." Murphy v. New Milford Zoning Comm'n, 402 F.3d at 348. "Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." Murphy v. New Milford Zoning Comm'n, 402 F.3d at 348; see also Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003) (noting that constitutional ripeness requirement "prevents courts from . . . constructing generalized legal rules unless the resolution of an actual dispute requires it").

Courts recognize one exception permitting federal court review of a non-final decision—"if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." Murphy v. New Milford Zoning Comm'n, 402 F.3d at 349. This occurs when "a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." Id. Courts have interpreted this futility exception narrowly. Missere v. Gross, 826 F. Supp. 2d 542, 555 (S.D.N.Y. 2011). "Although the precise contours of the futility exception are not well-defined, courts in the Second Circuit have recognized that mere allegations of open hostility are not sufficient to invoke the futility exception." Norwood v. Salvatore, 2015 WL 631960, at *5 (N.D.N.Y. Feb. 13, 2015) (internal citations and quotations omitted); Osborne v. Fernandez, 2009 WL 884697, at *6 (S.D.N.Y. Mar. 31, 2009), aff'd, 414 F.

App'x 350 (2d Cir. 2011) (rejecting futility argument based on allegations that "defendant decisionmakers were hostile to plaintiffs' proposed development or act[ed] in bad faith").

Here, plaintiff's claims do not concern a final decision on her proposed land use. As Grass's January 20, 2017, decision noted, plaintiff could seek a use variance in order to complete her construction project. Plaintiff does not allege she either sought or was denied a variance. The ZBA's affirmation of Grass's decision did not affect plaintiff's ability to seek a variance. Nor was the planning board's January 25, 2018, determination a final decision, because the board informed plaintiff she could submit a new application and pay a corresponding fee to proceed with a new site plan.

Plaintiff argues her claims concern a final decision, because defendants previously approved plaintiff's request to build a swimming pool and a pole barn and then rescinded their approval. Defendants' decisions, however, do not (yet) prevent plaintiff from constructing a pool and barn. Plaintiff still can seek a variance, permitting her to build both improvements.

Plaintiff also argues the town's previous approval and her commencement of construction created a "vested right" to complete construction, as a district court purportedly recognized in Gavlak v. Town of Somers, 267 F. Supp. 2d 214, 221 (D. Conn. 2003). The Gavlak court recognized no such right. Rather, it found plaintiffs' due process claim ripe because it concerned a town's final decision on plaintiffs' existing collection and bottling of spring water on their property. Id. Here, plaintiff's claims do not arise from a final decision and concern ongoing construction.

Furthermore, the futility exception is inapplicable. Plaintiff does not plausibly allege the town has "made clear that applications for relief will be denied." Murphy v. New Milford Zoning Comm'n, 402 F.3d at 349. In fact, the town previously approved her site plan. After

8

finding violations of the approved site plan, Grass informed plaintiff she could apply for a use variance. When the planning board deemed abandoned plaintiff's request to renew her site plan, it told her she could file a new application.

Plaintiff argues she has plausibly alleged futility, because of the town's long delay, a ZBA member's statement surmising plaintiff would need multiple site plan extensions to finish the project,[5] and a "labyrinth of red tape." See Sherman v. Town of Chester, 752 F.3d 554, 562 (2d Cir. 2014).

None of these arguments is persuasive. While the town took many months to hear and consider plaintiff's appeals, plaintiff choose to pursue lengthy appeals instead of seeking a use variance. Plaintiff was well within her rights to do so, but she cannot now chalk up years of delay to the town's actions alone. As to the ZBA member's allegedly hostile statement, plaintiff does not allege the member said plaintiff's application would be denied. Rather, the member pointed to plaintiff's lack of progress in nineteen months and noted one extension would probably be insufficient. Finally, plaintiff's allegations do not depict a "labyrinth of red tape," as the Second Circuit described it in Sherman v. Town of Chester, 752 F.3d at 562. The plaintiff in that case alleged the town changed its zoning regulations every time he submitted or was about

---

5    Plaintiff alleges the ZBA member said: "Maybe I'm speaking outside of the narrow focus of what we're trying to do here, but I'll tell you, from past performances, Miss Thomas did an abysmal job of this project. She was given two years, from six months' time and two years full-time, six months commencement time from the exception letter that she received from [DEC]. She had roughly 19 months, and that's a generous potential underestimation of the amount of time she's had to excavate this material and she only removed 23 percent of the material. So what are we going to do? We['re] going to get into the middle of this thing again and then we're going to ask for another extension and another extension. . . . I just don't see you pulling this. Based on past performance, I don't see you pulling this thing off in a[] two year exemption time you're granted by the State. I just don't see it happening based on past performance." (Compl. ¶ 459).

9

to submit a proposal, and the town retroactively issued a six-month moratorium on development that applied only to him. Plaintiff's claims here allege no such impropriety.

In sum, there has been no final administrative decision and plaintiff does not plausibly allege the futility exception applies. Accordingly, plaintiff's claims are not ripe and must be dismissed.[6]

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #37) and close this case.

Dated: March 4, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[6] Although plaintiff has not moved for leave to amend, any such motion would be denied as futile, because plaintiff's claims are in fact not ripe for review, and thus, the Court lacks subject matter jurisdiction to adjudicate this case. See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (leaving "unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility"); see also Chan v. Reno, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996) (denying leave to amend for futility because amended complaint "fail[ed] to present this Court with subject matter jurisdiction").